2016 IL App (3d) 130779

Opinion filed January 26, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Whiteside County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-13-0779 |
| v. | ) ) | Circuit No. 94-CF-187 |
| JERRY D. JELLIS, | ) ) | Honorable Stanley B. Steines, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Holdridge specially concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1     Twenty years ago, a Whiteside County jury convicted defendant, Jerry D. Jellis, of one

count of home invasion (720 ILCS 5/12-11 (West 1994)) and six counts of aggravated criminal

sexual assault (720 ILCS 5/12-14 (West 1994)).  Defendant appeals from the denial of his

successive petition for postconviction relief, which advanced to the third stage of postconviction

proceedings.  We affirm.

¶ 2                                        FACTS

¶ 3     During the jury trial, the victim testified that on August 5, 1994, the victim returned to

her home with three friends sometime between 1:15 a.m. and 1:30 a.m.  Shortly after, as the

victim's friends were leaving her home, defendant arrived in his vehicle. The victim knew defendant because she had previously dated his brother. Defendant told the victim that he was looking for his brother. After about 20 minutes, defendant left. The victim's friends then left, and the victim went to sleep.

¶ 4 At some point in the night, the victim woke up and found defendant on top of her. Defendant punched the victim in the jaw, knocking her onto the bed. Defendant then sexually assaulted the victim three times. Later in the night, defendant sexually assaulted the victim three more times. Defendant made the victim shower and allowed her to go to work. Defendant then left the victim's home. The victim reported the incident when she arrived at work and was taken to the hospital.

¶ 5 The State presented other evidence supporting the victim's testimony. First, testimony that defendant's fingerprints were found on the alarm clock from the victim's bedroom. Second, DNA evidence linking defendant to the crime. Third, testimony of the nurse treating the victim that the victim identified defendant as the man who assaulted her.

¶ 6 The jury found defendant guilty of one count of home invasion (720 ILCS 5/12-11 (West 1994)) and six counts of aggravated criminal sexual assault (720 ILCS 5/12-14 (West 1994)). The circuit court sentenced defendant to three consecutive 10-year terms of imprisonment, three consecutive 15-year terms of imprisonment, and one 10-year concurrent term of imprisonment. In total, the court sentenced defendant to 75 consecutive years' imprisonment.

¶ 7 Following defendant's convictions, he filed a direct appeal. In 1997, this court affirmed defendant's convictions and sentences. *People v. Jellis*, No. 3-95-0251 (1997) (unpublished order under Supreme Court Rule 23). Subsequently, defendant filed a petition for postconviction

2

relief. The circuit court dismissed the petition and this court affirmed the dismissal on appeal. *People v. Jellis*, No. 3-98-0457 (2000) (unpublished order under Supreme Court Rule 23).

¶ 8     Defendant next filed a motion for leave to file a successive postconviction petition. This motion and the attached proposed petition for postconviction relief are the operative pleadings to the instant appeal. In his motion, defendant argued his trial attorney was ineffective by failing to convey a 30-year plea offer made by the prosecution. Defendant argued he had cause for not raising this claim in his first postconviction petition because he was not aware that the State made a plea offer to his trial attorney. According to the motion, defendant learned the offer existed after he completed a Freedom of Information Act (FOIA) (5 ILCS 140/1.1 *et seq.* (West 2012)) request for information on his case. The motion argued defendant was prejudiced by his trial attorney's failure to convey the plea offer because he would have accepted the offer rather than proceed to trial.

¶ 9     Attached to the motion is defendant's proposed successive postconviction petition. Included in the petition is a letter from February of 2012 written by defendant to the attorney who prosecuted defendant's case. The letter asked the prosecutor whether he had made a plea offer to defendant's trial attorney. Defendant sought this information after a conversation defendant had with an unidentified individual. According to defendant, the unnamed person was represented by the same defense attorney as defendant. The unidentified individual told defendant that the attorney failed to convey a plea offer made by the prosecution in his criminal case. Because the offer was never conveyed to the unnamed person, he "was allowed to plea out on the charge." The petition does not contain an affidavit from the unidentified person.

¶ 10     Another letter written by defendant to the prosecuting attorney is attached to defendant's petition. The letter, written in March of 2012, is defendant's FOIA request for information

regarding the existence of the plea offer in his case. The response to defendant's FOIA request is also included in defendant's petition. The response included a copy of a 1994 letter sent by the prosecuting attorney to defendant's trial attorney. The letter states, "Jerry Jellis–I don't have the DNA evidence back as yet, so if we can't work this out it may have to be continued. Offer is 30 years total."

¶ 11    Also attached to the petition is an affidavit signed by defendant. The affidavit alleged that the only time a plea offer was discussed between defendant and his attorney was when his attorney was first appointed to represent him in this case. At their first meeting between the two, defendant's trial attorney informed defendant that he believed the prosecution would offer a plea agreement in the range of 60 to 75 years. Defendant further asserted that this meeting was the only time a possible plea agreement was discussed and his attorney never informed him of the 30-year plea offer tendered by the prosecution. According to defendant, had the offer been conveyed to him, he would have accepted it.

¶ 12    The trial court granted defendant leave to file the successive petition, found that defendant's petition stated the gist of a constitutional claim, and appointed counsel to represent defendant at the postconviction proceedings. Appointed postconviction counsel amended the petition, alleging trial counsel was ineffective by failing to inform defendant of the plea offer made by the State and that defendant would have accepted the offer had his attorney conveyed it to him. The State filed a response to defendant's amended petition and the petition advanced to a third-stage evidentiary hearing, where the following evidence was adduced.

¶ 13    Defendant testified that his trial attorney never conveyed the prosecutor's 30-year plea offer to him. In addition, defendant was unaware of the prosecutor's letter containing the 30-year plea offer. Defendant only became aware of the contents of the letter after he received a copy in

4

response to a FOIA request he had submitted. Defendant explained that he made the FOIA request after he learned from an unidentified inmate that his trial attorney had not conveyed plea offers in the unidentified inmate's case.

¶ 14    According to defendant, the only time plea negotiations were discussed was when he first met his trial attorney. During that discussion, defendant's attorney told defendant that he believed the prosecution would offer 60 to 75 years' imprisonment. In response, defendant told his trial attorney that he would need a better offer if he was going to plead guilty. Defendant asserted he never asked his trial attorney to make a plea offer to the prosecution because he did not believe it was defendant's responsibility.

¶ 15    When asked if he would have accepted the 30-year offer, defendant responded, "that would have been one that I would have considered, but my first thing what I would have asked [my attorney] was if he could have tried to get him down a little more." When asked if he would have accepted the 30-year offer in the event the prosecution refused to reduce the 30-year offer, defendant answered, "yes." Defendant also stated that he never told his trial attorney that he would reject the 30-year plea offer.

¶ 16    The prosecuting attorney testified that he recognized the letter he sent to defendant's trial attorney wherein he offered the 30-year plea agreement. According to the prosecutor, defendant's trial attorney informed him that defendant would not accept the 30-year offer, but wanted to know if the prosecution would offer less. The prosecutor responded that the 30-year offer was the lowest he would offer. The prosecutor also recalled a later conversation with defendant's trial attorney where trial counsel told him that defendant would not accept any plea offer and defendant planned to proceed to trial because defendant had recently been found not guilty in a similar case in Rock Island. The prosecutor also indicated that it was his practice to

5

revoke plea offers once additional evidence, such as DNA evidence, is obtained. Before trial, the prosecutor received both DNA evidence and fingerprint evidence implicating defendant. The prosecutor stated that he did not specifically revoke the 30-year offer because he was told that no offer would be accepted by defendant.

¶ 17 Defendant's trial attorney testified that he could not recall the letter written by the prosecutor. Defendant's trial attorney also could not recall the 30-year offer. According to defendant's trial attorney, it was his practice to convey plea offers to his clients based on his ethical and legal obligations. Defendant's trial attorney did testify to a notebook he kept in which he recorded summaries of the cases he handled. The notebook included an entry with a summary of defendant's case. In the entry is a note of the 30-year plea offer. The notebook did not include any information as to whether he ever discussed the offer with defendant.

¶ 18 Applying the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the circuit court found that the 30-year plea offer had been made and there was no evidence that the offer was ever conveyed to defendant. Therefore, the circuit court concluded trial counsel's performance was deficient and the first prong under *Strickland* had been satisfied. The circuit court went on to conclude defendant failed to satisfy the second prong because defendant failed to demonstrate he would have accepted the 30-year plea offer absent counsel's deficient performance. The circuit court denied defendant's petition; defendant appeals.

¶ 19                                                    ANALYSIS

¶ 20 Defendant appeals from the third stage denial of his successive postconviction petition. Specifically, defendant contends it was against the manifest weight of the evidence for the circuit court to conclude that defendant failed to demonstrate that he would have accepted the 30-year plea offer absent trial counsel's deficient performance.

6

¶ 21        At the outset, we note that the propriety of the circuit court's grant of leave to file a successive postconviction petition is not an issue argued on appeal. Rather, the parties dispute defendant's contention that it was against the manifest weight of the evidence for the circuit court to conclude that defendant failed to demonstrate that he would have accepted the 30-year plea offer absent trial counsel's deficient performance. Nevertheless, "[w]e may affirm on any basis supported by the record if the judgment is correct." *People v. Smith*, 2013 IL App (4th) 110220, ¶ 21. Upon review of the record, we affirm the denial of defendant's successive postconviction petition on the basis that the trial court's decision was supported by the manifest weight of the evidence and must be affirmed. But first we point out that it was error to grant defendant's petition for leave to file his successive postconviction petition.

¶ 22                         I. Leave to File a Successive Postconviction Petition

¶ 23        Illinois courts have repeatedly recognized that " '[s]uccessive postconviction petitions are disfavored.' " *Id.* ¶ 20 (quoting *People v. Gillespie*, 407 Ill. App. 3d 113, 123 (2010)). Thus, "a defendant attempting to institute a successive postconviction proceeding, through the filing of a second or subsequent postconviction petition, must first obtain leave of court." *Gillespie*, 407 Ill. App. 3d at 123.

¶ 24        To obtain leave to file a successive postconviction petition, a defendant who does not claim actual innocence in the successive petition must establish cause and prejudice on the pleadings. 725 ILCS 5/122-1(f) (West 2012). Unlike an initial postconviction petition, where defendant need only establish a gist of a constitutional claim, the cause and prejudice test for leave to file a successive petition represents a higher standard for defendant to satisfy. *Smith*, 2013 IL App (4th) 110220, ¶ 29. To satisfy defendant's burden, a defendant must " 'submit enough in the way of documentation to allow a circuit court' " to determine whether defendant's

7

allegations satisfy the cause and prejudice test. *People v. Edwards*, 2012 IL 111711, ¶ 24 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)). These requirements demonstrate "immense procedural \*\*\* hurdles" which are lowered in "very limited circumstances." *People v. Tenner*, 206 Ill. 2d 381, 392 (2002).

¶ 25                                    A. Cause

¶ 26        A petitioner "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2012). In this case, the only cause defendant alleged was that he was never made aware of the prosecution's plea offer and had only recently learned of the offer based on a conversation with an unidentified individual. We reject defendant's subjective ignorance of the plea offer as cause. Defendant's mere failure to recognize his claim cannot be an objective factor external to the defense that prevents one from bringing the claim in defendant's initial postconviction petition. See *People v. Jones*, 2013 IL App (1st) 113263, ¶ 25. The letter containing the alleged plea offer existed for more than five years when defendant filed his first postconviction petition. Defendant had the ability to make a FOIA request at the time of his first postconviction petition but failed to do so.

¶ 27        In reaching our conclusion, we reject defendant's offered explanation for waiting nearly 20 years to raise his claim as cause for his failure to raise the claim in his first postconviction petition. Defendant alleged that after serving nearly 20 years of his conviction he met, by chance, an individual who, at around the same time defendant was convicted, was also represented by the very same defense attorney and who also failed to convey a plea offer made by the State. Significantly, defendant fails to identify this unknown person or offer any detail regarding this individual's case. See *People v. Ivy*, 313 Ill. App. 3d 1011, 1019 (2000) ("An

8

allegation in a postconviction petition must be based on factual allegations and not mere conclusory statements."). Moreover, defendant fails to attach an affidavit from this unknown person which would support defendant's allegations. *Tidwell*, 236 Ill. 2d at 161 (Defendant must submit sufficient documentation to obtain leave to file a successive postconviction petition.). This unsupported, ambiguous explanation does not justify defendant's failure to obtain the information necessary to raise this claim in his first postconviction petition.

¶ 28                                          B. Prejudice

¶ 29        Similarly, defendant's motion and the attached petition fail to sufficiently support defendant's claim of prejudice. Prejudice is shown "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2012). In a claim of ineffective assistance of counsel for failing to inform a defendant of a plea offer, defendant must demonstrate prejudice with a reasonable probability that he would have accepted the plea offer absent trial counsel's deficient performance; and defendant must also demonstrate that the plea offer would have been entered without the prosecution rescinding the offer or the trial court refusing to accept the plea agreement. *People v. Hale*, 2013 IL 113140, ¶ 15.

¶ 30        Here, defendant's motion and petition are devoid of any allegation demonstrating a reasonable probability that the alleged plea offer would never be rescinded or that the trial court would have accepted the agreement. Nor does defendant's petition explain the absence of this information. Defendant cannot establish prejudice absent this information. *Id.* The trial court should have denied defendant's petition for leave to file.

¶ 31                                   II. Third Stage Proceedings

9

¶ 32    Ignoring defendant's failure to establish cause and prejudice, we reject defendant's substantive contention that the circuit court's findings at the third-stage hearing were against the manifest weight of the evidence.

¶ 33    To state a claim of ineffective assistance of trial counsel in the plea bargaining context, defendant must satisfy the two-prong test set forth in *Strickland*, 466 U.S. at 687-88. As discussed above, this requires defendant to show that trial counsel's performance fell below an objective standard of reasonableness and that defendant was prejudiced by counsel's deficient performance. *Id.* We review a trial court's determination following an evidentiary hearing under the manifestly erroneous standard. *People v. Coleman*, 183 Ill. 2d 366, 384-85 (1998).

¶ 34    In dismissing defendant's petition, the circuit court initially concluded that the first prong under *Strickland* had been satisfied. The circuit court concluded counsel performed deficiently by concluding the only "direct evidence" adduced at the hearing was "that [defendant] was not informed of that offer of 30 years in the Department of Corrections." Therefore, the circuit court found trial counsel's failure to convey the plea offer to defendant fell below the objective standard of reasonableness. Nevertheless, the trial court dismissed defendant's petition because he failed to establish *Strickland*'s second prong because defendant did not demonstrate that he would have accepted the plea offer.

¶ 35                          A. Counsel's Representation

¶ 36    As to the first prong, we acknowledge the circuit court found counsel deficient on the grounds that a plea offer was made and never conveyed to defendant. However, upon review, we find the evidence overwhelmingly supports a finding that the plea offer was, in fact, communicated to defendant. See *id.* (manifestly erroneous standard applies in review of a third-stage postconviction evidentiary hearing). At the third-stage hearing, defendant explained that if

10

he were offered the 30-year plea agreement, he would have asked his attorney to negotiate a reduced sentence. Similarly, the prosecution testified to a conversation he had with defendant's attorney, which is in line with defendant's claim that he would have negotiated a lower sentence. In particular, the prosecutor recalled a conversation he had with defendant's attorney in which trial counsel indicated defendant would not accept the offered 30-year plea agreement and asked whether the prosecutor would lower the offer. Moreover, the prosecutor recalled another conversation with defendant's attorney in which defendant's attorney informed the prosecutor that defendant was "bound and determined to go to trial" after being acquitted of similar charges in another county and would not accept any plea offer.

¶ 37    In addition, defendant's attorney testified that it was his regular practice to communicate plea offers to his clients in every case, especially felony cases. Given that nearly 20 years had passed between the trial and defendant's successive postconviction petition, it is understandable that defense counsel could not specifically recall conveying the offer to defendant. Further, we find no basis in the record to believe that defense counsel would not have followed his regular practice and communicated the 30-year offer to defendant. Considered together, the evidence at the third-stage hearing demonstrates that defendant was made aware of the 30-year plea offer. However, we will proceed as if it had not.

¶ 38                                    B. Prejudice

¶ 39    Assuming, *arguendo*, that defendant's attorney failed to communicate the plea offer, the evidence adduced at the third-stage hearing fails to show that defendant was prejudiced. As outlined above, to show prejudice defendant must demonstrate with a reasonable probability that he would have accepted the plea offer absent trial counsel's deficient performance; and defendant must also demonstrate that the plea offer would have been entered without the prosecution

11

rescinding the offer or the trial court refusing to accept the plea agreement. *Hale*, 2013 IL 113140, ¶ 15. We find defendant failed to demonstrate he would have accepted the plea offer. In fact, the evidence established defendant rejected (or would have rejected) the offer.

¶ 40    In *People v. Henderson*, our supreme court noted:

> "Although the application of contract law principles to plea agreements may require 'tempering in some instances' in order to satisfy concerns for due process, plea agreements are nonetheless subject to traditional principles of contract law absent such concerns. [Citations.]  Pursuant to traditional principles of contract, the legal effect of a counteroffer is the rejection of a standing offer. [Citation.]  A rejected offer cannot be revived by a later acceptance. [Citations.]  When a defendant rejects a State offer, the parties go 'back to the drawing board.' [Citation.]"
> *People v. Henderson*, 211 Ill. 2d 90, 103-04 (2004).

¶ 41    Here, defendant's own testimony belies his claim that he would have accepted the plea offer. Defendant explicitly stated that he would have attempted to negotiate a lower sentence if offered a 30-year plea agreement. Such a statement indisputably demonstrates that defendant would have rejected the prosecution's 30-year plea offer by making a counteroffer. The fact that defendant went on to testify that he would have subsequently accepted the offer is irrelevant. There is no evidence that the State reoffered (or would have reoffered) the 30 years. Assuming, *arguendo*, that defendant was unaware of the 30-year offer, his testimony established that he would have met that offer with a lower counteroffer. That constitutes a rejection of the offer and so there is no offer for the State to revoke. The evidence at the third-stage hearing, including

12

defendant's testimony, established that defendant either did or would have rejected a 30-year offer by making a counteroffer. Further, the prosecutor testified that if he had DNA evidence incriminating defendant, he would have revoked any plea offer. The evidence establishes that the prosecutor did in fact receive DNA evidence and thus, any existing offer would have been revoked.

¶ 42        For all these reasons, we conclude defendant's petition was properly denied.

¶ 43                                 CONCLUSION

¶ 44        For the foregoing reasons, the judgment of the circuit court of Whiteside County is affirmed.

¶ 45        Affirmed.

¶ 46        JUSTICE HOLDRIDGE, specially concurring.

¶ 47        I agree with Justice Schmidt that the defendant failed to demonstrate a reasonable probability that he would have accepted the State's 30-year plea offer absent his trial counsel's allegedly deficient performance. I concur in that portion of Justice Schmidt's analysis (see *supra* ¶¶ 39-41), and I join Justice Schmidt in affirming the trial court's judgment on that basis.

¶ 48        PRESIDING JUSTICE McDADE, dissenting.

¶ 49        The majority has affirmed the decision of the circuit court of Whiteside County and found that its denial of defendant's postconviction petition was proper. I disagree with this finding as the record clearly shows that defendant was prejudiced as a result of trial counsel's failure to convey the 30-year plea offer to defendant.

¶ 50        The majority first sets out an analysis regarding an issue it articulates but which has not been asserted by the State. Moreover, in most instances, if the case has survived a motion to dismiss and has reached third-stage proceedings, the issue of the court having granted a

13

successive posttrial motion at all is deemed to be moot. See *People v. Harris*, 224 Ill. 2d 115, 126 (2007). Thus, I decline to address that analysis in my dissent.

¶ 51    With regard to the third-stage proceeding that is actually at issue here on appeal, it is difficult for me to comprehend the leaps the majority makes in determining that the defendant failed to satisfy the two-prong *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To state a claim of ineffective assistance of trial counsel in the plea bargaining context, defendant must show (1) that trial counsel's performance fell below an objective standard of reasonableness and (2) that defendant was prejudiced by counsel's deficient performance. *Id.* We review a trial court's determination following an evidentiary hearing under the manifestly erroneous standard. *People v. Coleman*, 183 Ill. 2d 366, 384-85 (1998).

¶ 52    In the instant case, the circuit court concluded that the first prong under *Strickland* had been satisfied. In doing so, the circuit court made a factual finding that the 30-year plea offer had been made to trial counsel and that even with defense counsel's testimony, there was no evidence the offer was ever communicated to defendant. Therefore, the circuit court found that trial counsel had failed to convey the plea offer to defendant and that his performance fell below the objective standard of reasonableness.

¶ 53    The majority, however, speculates that the defendant must have been told about the 30-year plea offer because the State's Attorney testified that defense counsel asked for a better deal just as defendant testified he would ask the attorney to do. I, too, can speculate. If defense counsel had not sought a better deal on his own, he would not have been zealously advocating for his client. Ill. R. Prof. Conduct, Preamble (eff. January 1, 2010) ("As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealings with others."). Moreover, defense counsel's purported statement to the State's Attorney that defendant

14

was "bound and determined to go to trial" because he had previously been acquitted of similar charges could have been a negotiating tactic to secure a reduction in the offer. See *id.*

¶ 54     I find the record supports the circuit court's finding. *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998) (stating that a reviewing court "will disturb the circuit court's ruling in a post-conviction proceeding only *** if it contains error that is 'clearly evident, plain, and indisputable ' " (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997))). In finding support in the record for the trial court's conclusion, I note the letter itself and defendant's unrebutted testimony that his trial attorney never conveyed to him the 30-year offer contained in the letter. Such a failure is not only a breach of legal ethics, it clearly falls below a reasonable standing of competence.

¶ 55     Turn to the second prong of *Strickland*, I consider whether it was against the manifest weight of the evidence for the circuit court to conclude that there was no prejudice because defendant failed to demonstrate a reasonable probability that he would have accepted the 30-year plea offer, that it would not have been rescinded, and that the court would have accepted it (see *People v. Hale*, 2013 IL 113140, ¶ 15). Applying contract law principles and an analysis of the State's Attorney's testimony, the majority concludes the trial court's finding was not against the manifest weight of the evidence. Relying on defendant's testimony that he would have either rejected the offer or posed a counteroffer, the majority finds that defendant failed to satisfy this prong of the *Strickland* test. It further notes the State's testimony that if it had DNA evidence incriminating defendant, it would have revoked any plea offer.

¶ 56     Such reasoning is inconsistent with the majority's previous speculation regarding the State's presumed awareness and denial of defense counsel's rejection or counteroffer. Moreover, the record shows that the State never actually rescinded the 30-year plea deal. My review of the

15

record shows that, at the postconviction evidentiary hearing, defendant testified he would have accepted the 30-year plea offer had the offer been conveyed to him by trial counsel. The fact that defendant initially testified he would have bargained for a lower sentence is fully consistent with the concept of plea "negotiation." Defendant made clear, however, that he would have accepted the 30-year deal if the State refused to lower the offer. Indeed, had defense counsel discussed the plea offer with defendant and told him of counsel's inability to persuade the State's Attorney to offer a more favorable plea deal, there may well have been no exploratory rejection and counteroffer to communicate to the State.

¶ 57　　　　For me, the strongest argument in favor of a finding of prejudice derives from the fact that it is the defendant who must make the final decision to accept or reject a plea offer. It seems to me to be very close to *per se* or presumptively prejudicial for counsel not to even *inform* his client of a favorable offer that has been made to foreclose his ability to accept or reject it. This is particularly so where, as here, counsel had earlier communicated a belief that the State would probably make an offer in the range of 60 to 75 years. In addition, because the trial court made a factual finding based on the defendant's unrebutted testimony that he was never informed of the plea offer, defendant's testimony regarding his willingness to accept the offer carries significant weight.

¶ 58　　　　The maximum potential sentence defendant faced absent a plea agreement was 120 years. The sentence actually imposed after his trial was 75 years. The significant disparity between the potential and actual sentences and the offer on the table supports my conclusion that finding defendant would have accepted the shockingly shorter 30-year plea offer had it been conveyed to him. See *id.* ¶ 18 (stating the disparity between the sentence defendant faced and a significantly shorter plea offer can be supportive of defendant's claim of prejudice). Though the record does

establish that the State received DNA evidence at some point, one could only speculate that it would have received this evidence prior to defendant's and the court's acceptance of the plea deal or even if it would have rescinded the deal at all. [1] The fact is that the offer was never rescinded.

¶ 59      Based on defendant's testimony, the trial court's finding that the offer was never conveyed, the maximum sentence defendant faced, and the fact that the plea deal was never rescinded, I would find that the evidence demonstrates a reasonable probability that defendant would have accepted the 30-year plea offer and that he was prejudiced as a result of his trial counsel's deficient performance.

¶ 60      For the above reasons, I find the evidence at the third-stage postconviction hearing demonstrates trial counsel was ineffective and I respectfully dissent from the majority's contrary holding.

---

[1] I note the State failed to respond to defendant's argument that the evidence at the third-stage evidentiary hearing establishes a reasonable probability that the agreement would have been entered without the prosecution rescinding and without the court refusing to enter the agreement.