NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190595-U

NO. 4-19-0595

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 10, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| SHITAVIOUS J. COOK, | ) | No. 11CF1257 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 2   In September 2011, the State charged defendant, Shitavious J. Cook, with first degree murder, attempt (murder), and aggravated battery with a firearm. In June 2014, the State dismissed the first degree murder charges and added a charge of dismembering a human body.

¶ 3   In January 2015, as part of a negotiated plea agreement, defendant pleaded guilty to attempt (murder) (720 ILCS 5/8-4(a), 9-1(a) (West 2010)) and dismembering a human body (*id.* § 5/12-20.5(a)) in exchange for a sentence of 12 years and 10 years, respectively, with the sentences to run consecutively.

¶ 4   In January 2017, defendant *pro se* filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2.1 (West 2016)) raising several claims, including ineffective assistance of counsel. The trial court summarily dismissed the petition, and this court

affirmed that dismissal after granting the Office of the State Appellate Defender's (OSAD) motion to withdraw. *People v. Cook*, 2019 IL App (4th) 170206-U, ¶ 58.

¶ 5        In May 2019, defendant filed a motion for leave to file a successive postconviction petition, asserting his trial counsel was ineffective for failing to move to dismiss the dismembering charge pursuant to compulsory joinder principles. In August 2019, the trial court denied defendant's motion because the argument could have been raised in his original petition.

¶ 6        Defendant appeals, arguing his motion for leave to file a successive petition adequately demonstrated cause and prejudice. We disagree with defendant and affirm the trial court's judgment.

¶ 7                            I. BACKGROUND

¶ 8                            A. The Original Charges

¶ 9        In September 2011, the State charged defendant with three counts of first degree murder, two counts of attempt (murder), and one count of aggravated battery with a firearm. The first degree murder charges alleged that defendant killed Billy Rutherford with a shotgun on August 29, 2011. The remaining charges alleged that defendant fired a shotgun at Joshua Anderson on August 24, 2011, causing great bodily harm.

¶ 10        The State filed two sworn police statements with the charges. The first statement reported that defendant gave an interview with police on August 30, 2011. In that interview, defendant stated that he saw Rutherford walk into an alley and shortly thereafter heard multiple gunshots. Defendant walked into the alley and saw Rutherford lying on the ground. Felton Estes handed defendant a shotgun, and defendant "fired the shotgun one time into Rutherford's body."

¶ 11        The second sworn statement filed with the charges stated that on August 24, 2011,

Anderson informed the police that he had been shot by a shotgun in the side and leg while riding his motorcycle. During his August 30, 2011, interview with police, defendant stated he shot a man riding on a motorcycle at the intersection where Anderson had been shot. Defendant stated he believed Anderson was Rutherford, who had made threats against defendant's life, but defendant later learned that he had not shot Rutherford.

¶ 12                            B. Pretrial Proceedings and Guilty Plea

¶ 13            For the next few years, defendant's case was delayed while defendant cooperated as a witness in other cases for the State. Defense counsel and the State also engaged in plea negotiations. At a status hearing in April 2014, defense counsel stated she had made a counteroffer to the State. In May 2014, defense counsel requested another continuance, explaining, "This [case] can be set for a disposition date in two weeks because he needs to go through the evidence again on another count. He wants to look at the evidence again on another count. It's not on the murder." The State told the court, "We did make an offer. *** I'm hoping he will accept, but he does need to review the offer once more before he makes a decision."

¶ 14            In June 2014, the trial court conducted a status hearing and reviewed defendant's *pro se* motion to discharge his attorney and have a non-lawyer represent him. Defendant claimed that counsel had a conflict because she had represented a potential witness and her representation of that witness would have been relevant if defendant went to trial on the murder charge. However, defense counsel explained that defendant "is no longer being prosecuted for murder. [The witness] is not a potential witness in the case he is being prosecuted for now." The court denied defendant's motion to discharge his attorney.

¶ 15            Later in June 2014, the State filed a motion to dismiss the first degree murder charges and add a charge of dismembering a human body. In its motion, the State explained that

it had received a new opinion from a forensic expert that Rutherford was dead at the time defendant shot him. The State "intend[ed] to proceed with the theory that the victim *** was deceased when the Defendant allegedly discharged the shotgun." The State further noted that (1) the allegations regarding dismembering a human body "arise from the same facts and circumstances as the allegations contained [in the murder charges]" and (2) defendant would not be prejudiced by the change because it was a less serious offense. At the hearing on the State's motion, the State represented that "[defendant and his counsel] knew we planned to do this before a trial." Defendant did not object to the motion or the State's representations, and the trial court granted the State's motion.

¶ 16 In July 2014, defendant hired new private counsel to represent him. Counsel requested continuances to familiarize himself with the case and discuss a plea offer from the State. At a later hearing, the State and counsel represented that an offer had been made but defendant declined it. Defendant then filed a motion to sever the dismemberment charges from the attempt (murder) charges, which the trial court granted.

¶ 17 In January 2015, at a pretrial hearing, the State said it had made a written offer to defendant, who was requesting a week to consider it. One week later, at a status hearing on the offer, the trial court reviewed the terms of the offer with defendant to ensure defendant understood them. The court explained that if defendant was found guilty of attempt (murder), he would be sentenced to between 6 and 30 years in prison, served at 85%. The court further explained that if defendant was found guilty of dismembering a human body, the sentence would also be between 6 and 30 years, would run consecutively to the attempt (murder) prison term, and would be served at 50%. The plea would be fully negotiated, the State would dismiss an unrelated aggravated battery charge pending against defendant in another case, and defendant

would receive 12 years in prison for attempt (murder), 10 years for dismembering a human body, and, because of good time credit, the actual time served would be 15 years, 2 months, which did not include the 3 years of time served defendant had accrued. Defendant responded that he understood and did not want to accept the offer.

¶ 18    A few days later, the trial court conducted a hearing on another *pro se* motion from defendant seeking to discharge his attorney. Defendant alleged that counsel (1) did not convey a plea offer to defendant, (2) failed to investigate witnesses, and (3) failed to provide defendant with any discovery. In response, defense counsel stated that counsel conveyed the State's offer to defendant multiple times and defendant rejected the offer multiple times. The State said, "The same offer was made to [defendant's prior counsel] and she informed me that he rejected it when she represented him, too." The trial court denied defendant's motion to discharge counsel because the case was set for trial the next week. The court informed defendant he could represent himself or hire a new attorney but either way the trial would take place as scheduled.

¶ 19    The next day, on January 16, 2015, defendant accepted the fully negotiated plea agreement as previously stated on the record. When setting forth the factual basis for the plea, the State stated as follows:

> "Dr. Dentin, a pathologist, would testify as an expert that he performed an autopsy upon Billy Rutherford, and that in his expert opinion, Mr. Rutherford was killed as a result of gunshot wounds caused by a nine millimeter handgun, and that after Billy Rutherford was deceased, a shotgun blast had been ejected to his face, which caused damage and a disfiguring injury ***."

The State also noted that defendant had confessed to the police to shooting Anderson and

Rutherford.

¶ 20　　　　　On January 22, 2015, defendant *pro se* filed a "Notice to Appeal." Then, on February 27, 2015, defendant filed a "Motion to Withdraw Guilty Plea and Appointment of Counsel" in the trial court, claiming he pleaded guilty because his counsel provided him with "incorrect information," but the trial court dismissed the motion as untimely. In September 2015, defendant voluntarily dismissed his appeal.

¶ 21　　　　　C. Defendant's Postconviction Petition and Prior Appeal

¶ 22　　　　　In January 2017, defendant filed a postconviction petition that asserted: (1) defendant's attorneys provided ineffective assistance of counsel, depriving him of the opportunity to make an informed decision regarding the plea offer and (2) defendant should have been able to withdraw his guilty plea due to counsel's errors and the trial court's improper admonitions.

¶ 23　　　　　In February 2017, the trial court summarily dismissed defendant's postconviction petition, explaining that the allegations were conclusory and unsupported. Additionally, the court observed that defendant acknowledged in an affidavit attached to the petition that he committed the acts for which he was convicted and that his complaints were due to the fact that "he didn't like the deal his lawyers made."

¶ 24　　　　　In March 2017, defendant filed a notice of appeal, and OSAD was appointed to represent defendant on appeal. In December 2018, OSAD filed a motion to withdraw. This court granted OSAD's motion to withdraw, concluding that no meritorious issues for appeal existed, and affirmed the trial court's dismissal. *Cook*, 2019 IL App (4th) 170206-U, ¶ 58.

¶ 25　　　　　D. Defendant's Motion for Leave To File a Successive Petition

¶ 26　　　　　In May 2019, defendant filed a motion for leave to file a successive

postconviction petition. Defendant alleged he received ineffective assistance of trial counsel because the dismembering a human body charge was subject to compulsory joinder but was not brought until nearly three years after the original murder charges. As such, defendant argued that trial counsel should have moved to dismiss the charge. Defendant alleged he demonstrated (1) cause because of the complexity of the legal issue and (2) prejudice because he was subject to consecutive sentencing and there was a reasonable likelihood that the dismembering charge would have been dismissed.

¶ 27        In support of his motion, defendant attached several documents, including (1) the original charges, (2) the State's motion to dismiss the murder charges and add the dismembering charge, (3) a transcript of the guilty plea hearing, and (4) the sworn statements described earlier (*supra* ¶¶ 10-11), which detailed his statements to the police that (a) he saw Rutherford walk into an alley, (b) after hearing multiple gunshots, defendant went to the alley and saw Rutherford lying on the ground, and (c) defendant "fired the shotgun one time into Rutherford's body."

¶ 28        Defendant also attached (1) an autopsy report from 2011 that concluded Rutherford died of multiple gunshot wounds, some from a handgun and two from a shotgun, and (2) a November 2013 letter from Dr. J. Scott Denton to the State summarizing his review of the autopsy and investigation materials. Denton stated it was his "opinion that the cause of death of *** Rutherford is best certified as multiple gunshot and shotgun wounds that involved his head, back, right arm, buttocks and upper legs." Denton also noted, "The order in which Mr. Rutherford sustained these multiple wounds cannot be exactly determined by the autopsy itself." Denton's letter described both the gunshot and shotgun wounds to Rutherford's head as "caus[ing] a lethal injury."

¶ 29        In August 2019, the trial court entered a written order denying leave to file a

successive postconviction petition. The court explained that the facts comprising defendant's claims "were known to the Defendant at the time of his initial Petition." The court further stated that the State became aware that defendant may not have shot Rutherford until after he died "while they were preparing for trial," and concluded that defendant failed to meet the cause and prejudice test.

¶ 30    This appeal followed.

¶ 31                              II. ANALYSIS

¶ 32    Defendant appeals, arguing his motion for leave to file a successive petition adequately demonstrated cause and prejudice. We disagree and affirm.

¶ 33              A. The Standard of Review and Applicable Law

¶ 34                   1. *Successive Postconviction Petitions*

¶ 35    The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Bailey*, 2017 IL 121450, ¶ 17, 102 N.E.3d 114; 725 ILCS 5/122-1 (West 2018). The Act contemplates the filing of only one postconviction petition and expressly provides that " '[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.' " *Bailey*, 2017 IL 121450, ¶ 15 (quoting 725 ILCS 5/122-3 (West 2014)). However, a trial court may grant a defendant leave to file a successive postconviction petition if (1) the defendant demonstrates cause for his failure to bring the claim in the initial petition and (2) prejudice results from that failure. *Id.*

¶ 36    The Illinois Supreme Court has described the cause and prejudice test as follows:
"To show cause, a defendant must identify an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction

- 8 -

proceedings. [Citation.] To show prejudice, a defendant must demonstrate that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process. [Citation.]" (Internal quotation marks omitted.) *People v. Evans*, 2013 IL 113471, ¶ 10, 989 N.E.2d 1096.

¶ 37 A defendant does not need to "establish cause and prejudice conclusively prior to being granted leave to file a successive petition ***." *People v. Smith*, 2014 IL 115946, ¶ 29, 21 N.E.3d 1172. But the cause-and-prejudice test presents a higher burden than the frivolous or patently without merit standard applied at first-stage proceedings. *Id.* ¶ 35. A defendant must "submit enough in the way of documentation to allow a circuit court to make" the cause-and-prejudice determination. *People v. Tidwell*, 236 Ill. 2d 150, 161, 923 N.E.2d 728, 734-35 (2010). "In other words, the court must determine whether defendant has made a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24.

¶ 38 "Successive postconviction petitions are disfavored by Illinois courts." *People v. Blalock*, 2020 IL App (1st) 170295, ¶ 23. A trial court's denial of leave to file a successive postconviction petition presents a question of law that appellate courts review *de novo*. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 39 *2. Compulsory Joinder*

¶ 40 "The compulsory joinder statute requires the State to prosecute all known offenses within the jurisdiction of a single court in a single criminal case 'if they are based on the same act.' " *People v. Hunter*, 2013 IL 114100, ¶ 10, 986 N.E.2d 1185 (quoting 720 ILCS 5/3-3(b) (West 2008)). "Knowledge" for the purposes of the statute "means the conscious awareness of evidence that is sufficient to give the State a reasonable chance to secure a

conviction." *People v. Luciano*, 2013 IL App (2d) 110792, ¶ 78, 988 N.E.2d 943. When compulsory joinder applies, the statutory speedy-trial limit of the new charges is the same as the original charges (*Hunter*, 2013 IL 114100, ¶ 10), but delays attributable to the defendant on the original charges are *not* attributable to the defendant on the new charges. *People v. Larue*, 2014 IL App (4th) 120595, ¶ 26, 10 N.E.3d 959. The purpose of this rule "is to prevent trial by ambush wherein [t]he State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges." (Internal quotation marks omitted.) *Id.*

¶ 41                                    B. This Case

¶ 42            Defendant argues that he established cause by showing (1) the legal grounds for dismissing the dismembering charge were complex and incapable of being discerned by a non-lawyer, (2) OSAD first notified defendant of the claim during his appeal of the dismissal of his first postconviction petition, and (3) the documents necessary to raise the claim—namely, the autopsy report and Denton's letter to the State—were withheld from defendant by prior counsel. Defendant claims he was prejudiced by his trial attorneys' failure to dismiss the dismembering charge because there was a high likelihood that the trial court would have granted the motion. Defendant contends that the State knew about the potential charge based on defendant's statements to police that Rutherford was dead when he entered the alley and the autopsy reports, but waited three years before moving to add the charge, well outside the speedy trial limit. Defendant further asserts that his sentence would have been reduced if the dismembering charge had been dismissed because it was subject to mandatory consecutive sentencing.

¶ 43            The State responds that (1) defendant failed to satisfy cause because the necessary information to bring the claim was apparent on the face of the record, (2) defendant's ignorance

of the law of compulsory joinder does not amount to cause, and (3) defendant cannot establish prejudice because the motion to dismiss would have been denied. The State claims the dismembering charge was not subject to compulsory joinder with the murder charges because the State did not have knowledge to warrant the filing of the dismembering charge until it received Denton's letter in November 2013. Alternatively, the State contends defendant was not prejudiced because he had adequate notice of the dismembering charge and would not have suffered surprise.

¶ 44                                            1. *Cause*

¶ 45          Contrary to defendant's claims, all the information necessary to pursue his compulsory joinder claim was available on the face of the record. Defendant urges that he could not have discovered the State's violation of the compulsory joinder rule until he received the autopsy report and Denton's letter, which were outside of the record. However, the autopsy report and letter defendant attached to his successive petition do not support his position. Neither the autopsy report itself, nor Denton's November 2013 letter, contains a finding regarding the order of the gunshot wounds. Denton commented that the order of the gunshots cannot be determined from the autopsy and concluded that both would be lethal.

¶ 46          Instead, to get the information necessary to infer that the State had knowledge, defendant relies upon the State's motion to dismiss and the factual basis for the plea. The State's motion to dismiss contains the first reference to Rutherford's being dead prior to defendant's shooting him. The second and only other such reference in the trial record is at the plea hearing when the State recited that Denton would give an expert opinion that Rutherford was dead when defendant shot him in the face with a shotgun. Accordingly, all the information needed to complete defendant's claim comes from (1) the State's motion to dismiss, (2) the factual basis

- 11 -

for the guilty plea, and (3) defendant's own statements made in August 2011. Defendant could have raised this claim in a motion to withdraw, direct appeal, or his first postconviction petition.

¶ 47          Although it is true that compulsory joinder rules are not normally within the understanding of a *pro se* defendant, defendant has not satisfied cause as to why his delay should be excused. (We note that both of defendant's attorneys filed motions to sever the charges involving Rutherford from those involving Anderson and a discussion of joinder principles is mentioned in the record.) To establish cause, a defendant must show an "external cause impeding his ability to raise [the claim] in his original petition." *People v. Jones*, 2013 IL App (1st) 113263, ¶ 25, 3 N.E.3d 891. "[S]ubjective ignorance" of the law is not an objective factor in the cause analysis. *Evans*, 2013 IL 113471, ¶ 13; see also *People v. Jellis*, 2016 IL App (3d) 130779, ¶ 26, 50 N.E.3d 321 (plurality opinion) ("Defendant's mere failure to recognize his claim cannot be an objective factor external to the defense that prevents one from bringing the claim in defendant's initial postconviction petition."). We recognize that the Illinois Supreme Court has suggested that when, as in this case, a defendant is made aware of a legal argument by appellate counsel in collateral proceedings, the proper course of action is for the defendant to raise the claim in a successive petition. *People v. Jones*, 213 Ill. 2d 498, 508, 821 N.E.2d 1093, 1099 (2004). However, the defendant still must establish cause and prejudice. *Id.* We conclude defendant failed to establish cause in this case.

¶ 48                                    2. *Prejudice*

¶ 49          In addition, defendant cannot demonstrate prejudice. Defendant has not shown that he would (1) have received a more favorable plea offer or sentence or (2) insisted on pleading not guilty and going to trial. Instead, the record indicates (1) the plea offer was always the same, both before the State amended the charges and after, and (2) it was very unlikely that

- 12 -

defendant would have pleaded not guilty and insisted on going to trial.

¶ 50    Defendant entered into a fully negotiated plea agreement. As part of that agreement, the State dismissed all remaining charges, including aggravated battery charges from a 2014 case. In exchange for his plea, defendant received a guaranteed 22 years in prison, and the 10 years imposed for dismembering a corpse were to be served at 50% instead of the 85% required for attempt (murder). The State was under no obligation to offer defendant any plea agreement, much less a fully negotiated one favorable to defendant. Further, defense counsel may have realized that dismissing the dismemberment charge could have resulted in the State's withdrawing its plea offer. Or, the State could have made clear to defense counsel that its offer was 22 years in prison no matter the specific charges. Defendant was facing 6 to 30 years for attempt (murder), and any other Class 1 or Class X felony for which defendant was sentenced was required to be served consecutively. Even without the dismembering charge, the State had many different options for arriving at the 22-year figure it ultimately negotiated with defendant.

¶ 51    Defendant must show that there is a reasonable probability that he would have pleaded not guilty and insisted on going to trial. *People v. Brown*, 2017 IL 121681, ¶ 26, 102 N.E.3d 205. The trial court gave defendant a significant amount of time to consider the offer and repeatedly explained to defendant the terms of the offer and the rights he was giving up by pleading guilty. The evidence against defendant on the attempt (murder) charge was overwhelming. (Indeed, in his first postconviction petition, defendant submitted a sworn affidavit reiterating that he meant to shoot and kill Rutherford when he shot at Anderson.) The timing of the plea was also consistent with the strength of the State's case—defendant rejected multiple offers, and only accepted the State's offer when the prospect of trial drew closer. It appears less likely that defendant would have not pleaded guilty and demanded a trial when it was the threat

of a trial that seemed to motivate him to plead guilty in the first place.

¶ 52 Further, defendant has not made a *prima facie* case that he would have been prejudiced by the State's adding the dismembering charge. The purpose of the compulsory joinder rule is to prevent trial by ambush. Here, the State informed the trial court at the time it moved to add the dismembering charge that defendant was aware of the State's intentions. At the hearings prior, defense counsel informed that court that (1) defendant was reviewing evidence on a count other than murder in order to determine if he would accept the State's plea offer and (2) defendant was no longer being charged with murder. It was always defendant's position that Rutherford was dead before defendant shot him, something defendant also claims he told the police in his initial interview.

¶ 53 Based on our review of the record, we conclude that the State informed defendant about its change in theory as soon as it became aware of Denton's opinion and started negotiating a plea agreement under that new theory. Accordingly, no reason exists to think the trial court would not have permitted the State to add the dismembering charge. Accordingly, defendant did not show how defense counsel's failure to object or move to dismiss the dismembering charge prejudiced him.

¶ 54 In closing, we note that this court was favored with exceptional briefs from both parties, which this court found particularly helpful in addressing this case. We thank counsel for their efforts.

¶ 55 III. CONCLUSION

¶ 56 For the reasons stated, we affirm the trial court's judgment denying defendant leave to file a successive postconviction petition.

¶ 57 Affirmed.

- 14 -