2024 IL App (2d) 230289
No. 2-23-0289
Opinion filed December 24, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) )  ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) )  | |
| v. | ) ) | No. 13-CF-245 |
| ARMANDO GALLARDO, | ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Armando Gallardo, filed a postconviction petition pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2016)). After an evidentiary hearing, the trial court denied the petition. The defendant appeals from that order. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On February 7, 2013, the defendant was charged with two counts of attempted first degree murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2012)), one count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), and various weapons violations arising from a gang-related drive-by shooting on September 6, 2011, in which the defendant was alleged to have personally discharged a gun.

¶ 4    On Friday, February 15, 2013, a hearing was held that was originally scheduled as a final pretrial hearing for another case involving the defendant, No. 11-CF-2049 (hereinafter the 2011 case). The trial for the 2011 case was set to start the following Tuesday, with the defendant being represented by Kane County Assistant Public Defender Beth Peccarelli. The State informed the trial court that the defendant had been indicted in the present case a week earlier and that the warrant was being served on the defendant that day. The present case and the 2011 case both involved shootings that occurred six days apart. While the charges in both cases were similar, they involved different victims. The State announced that it was ready for trial but stated that the trial, scheduled for the following Tuesday, should be on the charges in the present case rather than those in the 2011 case. Peccarelli stated that she was not ready to proceed to trial on the present charges, as she had not yet been appointed to represent the defendant in this case. The trial court appointed Peccarelli to represent the defendant and stated that it would be unfair to expect her to be prepared for trial in this case on such short notice. The case was thus continued.

¶ 5    On May 28, 2013, at a hearing, the State indicated that the defendant would enter "cold" pleas on both cases. In each case, he would enter a "cold" plea to aggravated discharge of a firearm, a Class 1 felony. The remaining charges would be nol-prossed. After the defendant realized there was confusion as to whether his sentences would have to be served at 50% or 85%, he requested a continuance to reconsider his plea. The defendant also asked for a "bench trial setting because the State has some witness issues." The State acknowledged that it was in contact with most of its witnesses but was having trouble contacting the victim, Gabriel Berrios, who was under subpoena. The trial court entered a rule to show cause against the victim and continued the case. At a hearing two days later, the defendant declined to enter a "cold" plea and requested a bench trial.

¶ 6     The bench trial commenced in June 2013. The facts of the case were set forth in detail in our order issued in the defendant's direct appeal. See *People v. Gallardo*, 2016 IL App (2d) 140506-U. Therefore, we provide only the facts necessary for this disposition. In relevant part, Adam Argo testified that he was driving the car when, from the back passenger seat, the defendant fired three or four shots at the victim. Argo acknowledged that he was charged with similar offenses but reached a plea agreement with the State in exchange for his testimony against the defendant. Four days into the trial, after the State had rested, the trial court realized that the defendant had never been arraigned in the present case and arraigned the defendant for the first time. The trial court explained all charges, the potential minimum and maximum sentences for each charge, applicable firearm enhancements, and requirements of mandatory supervised release. The defense then proceeded with its case. The defendant's mother testified that the defendant was at home at the time of the alleged offenses. During the State's rebuttal case, the trial court admitted transcripts of telephone calls to and from the defendant while he was in the Kane County jail. Those recordings showed that the defendant had solicited a false alibi from his mother. The defendant also told his mother that the victim was not cooperating and that, if he had an alibi, he could "beat" his case.

¶ 7     The trial court convicted the defendant of attempted first degree murder, aggravated discharge of a weapon, and two weapons violations. Among other evidence, the trial court noted that the defendant's attempt to solicit a false alibi supported the finding of guilt. The defendant filed a motion for a new trial, arguing that the trial court's failure to arraign him prior to trial impaired his ability to make an informed decision regarding trial or plea. The trial court denied the motion and sentenced the defendant to 30 years' imprisonment for attempted murder; the other

convictions merged into the attempted murder conviction. The defendant appealed, and we affirmed his convictions. *Id.*

¶ 8    On June 26, 2017, the defendant filed a *pro se* postconviction petition in which he acknowledged declining an open plea in May 2013 but argued that he was never made aware of the nature of the charges against him or the minimum and maximum sentence for those charges, such that he could "knowledgeably enter such a plea." The trial court summarily dismissed the petition. The defendant appealed from that order. This court reversed and remanded for second-stage proceedings. *People v. Gallardo*, 2019 IL App (2d) 170822-U. We held that the defendant stated the gist of a constitutional claim that his trial counsel's performance was deficient because he was allegedly never "made aware of" the sentencing ranges he faced on all of the charges before rejecting the plea offer. *Id.* ¶ 20.

¶ 9    On March 22, 2022, the defendant filed an amended postconviction petition. The defendant noted that he was charged with attempted first degree murder, which had a sentencing range of 6 to 30 years, a mandatory 20-year firearm enhancement, and was subject to truth-in-sentencing. Thus, the defendant's minimum sentence was 26 years. The defendant was offered a plea agreement that, if he pleaded guilty to aggravated discharge of a firearm, all remaining charges would be dropped. There was no agreement as to the sentence. The sentencing range for aggravated discharge of a firearm was between 4 and 15 years, with the possibility of probation. The defendant argued that trial counsel was ineffective in failing to inform him of his minimum and maximum sentences and misstated the consequences of rejecting the State's plea offer by telling him that there was a substantial possibility that he would receive close to a four-year sentence if convicted.

¶ 10    In an affidavit, the defendant asserted that, at the May 28, 2013, hearing, he was planning to accept the plea offer and had already signed the paperwork. However, there was disagreement

between the State and defense counsel on whether the sentence for aggravated discharge of a firearm would have to be served at 50% or 85%. Two days later, when he learned that the sentence would have to be served at 85%, he told defense counsel he was upset. She told him she would proceed with trial and see what happened. The defendant further asserted that defense counsel never informed him of the minimum and maximum sentences for his charges and did not explain the consequences of accepting or rejecting the plea offer. The defendant stated that he would have accepted the plea offer if he had been adequately advised on the sentencing parameters for his charged offenses.

¶ 11    Thereafter, the State filed a motion to dismiss the defendant's petition. The trial court denied the motion, and the matter proceeded to a third-stage evidentiary hearing.

¶ 12    On April 21, 2023, the defendant testified that, prior to his bench trial, neither the trial court nor defense counsel informed him of the potential penalties of the charges against him. Prior to trial, defense counsel told him that the State was offering a "cold" plea to aggravated discharge of a firearm, to be served at 50%, in exchange for dropping all the other charges. During discussions about the plea, defense counsel never explained the possible sentences for all the charges he faced. When it came time to enter the plea at a hearing, defense counsel learned that a "cold" plea to aggravated discharge of a firearm would have to be served at 85%. Defense counsel told the defendant that she would request a continuance to speak with the State about the discrepancy over whether the sentence would have to be served at 50% or 85%. At defense counsel's request, the trial court continued the case for two days. Defense counsel never came to speak with him during that time. When he returned to court two days later, defense counsel said he would have to serve the sentence on the "cold" plea at 85%. He told her that he did not want to take the 85% deal. The defendant further stated that he was unaware of the penalties he faced until he was arraigned by

the trial court four days after his trial began. Thus, he was unaware of the penalties for the charges against him when he rejected the plea offer. He testified that he would "absolutely" have accepted the plea offer to be served at 85% if he had been aware of the actual penalties for the charges he was facing.

¶ 13    Peccarelli testified that, in 2013, she had been practicing law for almost 23 years. She started working in the Kane County Public Defender's Office in 1991. She had represented thousands of defendants as an assistant public defender. Whenever she received a plea offer, it was her common practice to go through the offer with a defendant, discussing the charges a defendant faced, the potential penalties for each charge, and whether there would be consecutive sentencing. She would do this so that a defendant could make an informed decision on whether the offer was reasonable. She always gave as much information as possible so a defendant could make an informed decision. She would discuss an offer with a defendant, whether it was good or bad.

¶ 14    Peccarelli recalled that the State made an offer in this case for the defendant to plead guilty to aggravated discharge of a firearm. When asked whether the State extended an offer of eight years in exchange for a plea of guilty to aggravated discharge of a firearm, Peccarelli stated "[t]hat's my recollection." Peccarelli testified that she discussed the plea offer with the defendant. She did not recall the specific discussions, but it was her practice to convey any offers. She would discuss all the pending charges and possible sentences with a defendant, so a defendant could make a fair assessment of whether it was a good offer. When asked whether she went to court on May 28, 2013, prepared to enter a "cold" plea, Peccarelli said she was "having a hard time recollecting." She acknowledged that she was initially confused about whether the plea offer in this case would have to be served at 50% or 85%. After she realized it was 85%, she asked for a continuance to discuss it with the defendant.

¶ 15    Peccarelli further testified that, after the continuance, she discussed the plea offer with the defendant again. She recalled discussing with the defendant that serving a sentence of eight years at 85% was significantly different than serving it at 50%. She discussed all the remaining charges and the penalties for each charge with the defendant because, if the defendant did not take the offer, he was still looking at the mandatory firearm enhancements of 15 to 20 years and Class X sentencing for attempted first degree murder. She never made the decision about whether to accept or reject a plea offer; it was always the client's decision. After her discussions with the defendant about the plea offer having to be served at 85%, the defendant rejected it. Peccarelli testified that when the defendant rejected the plea offer, "[h]e should have been" aware of the range of penalties he faced on all the charges.

¶ 16    On cross-examination, Peccarelli testified that she had no notes of her discussions with the defendant about the plea offer. She historically did not take notes because she did not want to have to turn them over to prosecutors. She acknowledged that the defendant was not arraigned on the charges in this case until after his trial started. She testified that she informed the defendant of the penalties for all the charges against him but acknowledged that she had no notes memorializing that discussion. She knew she informed the defendant of the charges and sentences because it was her common practice. She could not recall the exact date she reviewed the charges and penalties with the defendant. She acknowledged that, in the defendant's motion for a new trial, she argued that the trial court's failure to arraign the defendant prior to trial impaired his ability to make an informed decision regarding whether to accept or reject the plea offer.

¶ 17    Following argument, the trial court denied the defendant's postconviction petition, finding that the defendant failed to prove, by a preponderance of the evidence, that trial counsel was ineffective or that he had not been advised of the potential penalties he faced before rejecting his

plea offer. The trial court noted Peccarelli's testimony that it was her common practice to communicate the range of sentences faced by a defendant when offered a plea. The trial court cited *People v. Jellis*, 2016 IL App (3d) 130779, ¶ 37 (lead opinion), for the proposition that, after an extended period, it is understandable that an attorney could not recall specific discussions with a client and that testimony as to common practice is sufficient to show that an attorney adequately discussed a plea offer with the defendant. *Id.* While the trial court did not make an explicit finding that the defendant failed to establish prejudice, the trial court noted that it was possible that the defendant declined the plea offer because he was present when the State informed the trial court that the victim had not responded to his subpoena; thus, the defendant could have been hoping that the victim would not show up for trial. The defendant filed a timely appeal from the trial court's order.

¶ 18                                II. ANALYSIS

¶ 19     On appeal, the defendant argues that the trial court erred in denying his postconviction petition. The defendant asserts that he proved by a preponderance of the evidence that defense counsel performed deficiently in failing to advise him of the potential penalties for all the charges against him and that he was prejudiced because, if he had been properly advised, he would have accepted the State's plea offer.

¶ 20     The Act provides a three-stage process to remedy a defendant's conviction that resulted from a substantial violation of his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2022); *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). At the third stage, a defendant has the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006). The defendant is entitled to a hearing where the trial court "may receive evidentiary proof via affidavits, depositions, testimony, or other evidence, and may order the petitioner brought

before the court." *People v. Gerow*, 388 Ill. App. 3d 524, 527 (2009). "[W]e must give great deference to the trial court's factual findings because the trial court stands in the best position to weigh the credibility of the witnesses." *In re Floyd*, 274 Ill. App. 3d 855, 867 (1995). Accordingly, "[a] judge's factual findings and credibility determinations made at a third-stage evidentiary hearing of a postconviction proceeding should be disturbed only if manifestly erroneous, that is, only if the court committed an error that is clearly evident, plain, and indisputable." (Internal quotation marks omitted.) *People v. Eubanks*, 2021 IL 126271, ¶ 47.

¶ 21 A defendant's sixth amendment (U.S. Const., amend. VI) right to effective assistance of counsel applies to plea negotiations, and claims of ineffective assistance in the plea bargain process are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hale*, 2013 IL 113140, ¶ 15. To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the defendant. *People v. Johnson*, 2021 IL 126291, ¶ 52. A failure to satisfy either prong of *Strickland* is fatal to a claim of ineffective assistance. *Id.* ¶ 53.

¶ 22 A defendant has a constitutional right to elect what plea to enter (*People v. Williams*, 2016 IL App (4th) 140502, ¶ 33) and to be reasonably informed as to the direct consequences of accepting or rejecting a plea offer (*Hale*, 2013 IL 113140, ¶ 16). Counsel's performance is deficient if counsel fails to ensure that a defendant accepts or rejects a plea voluntarily and intelligently. *People v. Marcus*, 2023 IL App (2d) 220096, ¶ 64. To establish prejudice where a plea offer was rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have accepted the plea offer absent his attorney's deficient advice. *Hale*, 2013 IL 113140, ¶ 18. Such demonstration must include more than a defendant's

own subjective, self-serving assertions. *Id.* Instead, there must be " 'independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice,' and not on other considerations." *Id.* (quoting *People v. Curry*, 178 Ill. 2d 509, 532 (1997)). Additionally, a defendant must demonstrate a reasonable probability that the plea would have been entered without the prosecution withdrawing it or the trial court refusing to accept it. *Id.* ¶¶ 19-20. "The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice." *Id.* ¶ 18.

¶ 23    Here, in arguing that the trial court erred in failing to find that Pecarelli performed deficiently, the defendant asserts that the trial court's credibility determinations were against the manifest weight of the evidence. The defendant argues that he consistently and credibly testified that he was never informed of the sentences he faced and, if he had been properly informed, he would have accepted the plea offer. In contrast, the defendant argues that Peccarelli was less credible because she had no memory of advising him, did not testify that she followed her common practice in this case, and testified that she kept no notes of their conversations about the plea offer on the mistaken belief that, despite the attorney client privilege, she could have been required to provide her notes to a prosecutor. The defendant also points out that Peccarelli testified that he was offered both an open plea and a sentence of eight years.

¶ 24    Based on our review of the record, we cannot say that the trial court's credibility findings were against the manifest weight of the evidence. Peccarelli testified that, in 2013, she had been a public defender for 23 years. Her common practice as a public defender was to convey any plea offers to a defendant. She would discuss all the charges and their possible sentences with a defendant so that a defendant could make an informed decision as to whether to accept or reject a plea offer. While she could not remember the specific conversations she had with the defendant,

she remembered that the State had made a plea offer and that the defendant chose to reject the plea offer because he did not want to serve the ultimate sentence at 85%. Based on this testimony, the trial court was entitled to conclude that Pecarelli followed her usual practice and had provided the necessary information for the defendant to make an informed decision regarding the plea offer. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009) (it is the responsibility of the fact finder to resolve conflicts in the evidence and to draw reasonable inferences from the evidence). Considering that the evidentiary hearing took place 10 years after the plea offer, it is not surprising that Peccarelli could not remember specific discussions in detail. Moreover, the trial court heard the alleged shortcomings in Peccarelli's testimony but still found her testimony more credible. As the record supported the trial court's judgment, and because we give deference to the trial court's credibility findings, we hold that the trial court's judgment was not manifestly erroneous. *Id.* at 224-25.

¶ 25    In so ruling, we note that the defendant takes exception to the trial court's reliance on *Jellis*. At issue in *Jellis* was a postconviction claim, filed 20 years after trial, that the defendant's attorney failed to convey a plea offer to him. *Jellis*, 2016 IL App (3d) 130779, ¶ 8. The matter proceeded to a third-stage evidentiary hearing where the prosecutor testified that a plea was offered, the defendant testified that he was never informed of the offer, and defense counsel testified that it was his common practice to convey plea offers to a defendant. *Id.* ¶¶ 13-17. Although the trial court found that defense counsel failed to convey the plea offer, the reviewing court disagreed and reasoned on appeal that:

> "[The] defendant's attorney testified that it was his regular practice to communicate plea offers to his clients in every case, especially felony cases. Given that nearly 20 years had passed between the trial and defendant's successive postconviction petition, it is

understandable that defense counsel could not specifically recall conveying the offer to [the] defendant. Further, we find no basis in the record to believe that defense counsel would not have followed his regular practice and communicated the 30-year offer to [the] defendant. Considered together, the evidence at the third-stage hearing demonstrates that [the] defendant was made aware of the 30-year plea offer." *Id.* ¶ 37.

The defendant argues that this holding is not precedential because it did not represent the view of the majority of the court, as the only concurring justice did not join in this portion of the decision. See *id.* ¶ 47 (Holdridge, J., specially concurring). While the defendant is correct that plurality opinions have limited precedential value (*People v. Ryburn*, 2019 IL App (4th) 170779, ¶ 35), such decisions can still be considered as instructive on an issue (*People v. Flores*, 378 Ill. App. 3d 493, 496 (2008)). Accordingly, the trial court did not err in citing *Jellis* as instructive on the issue of whether Peccarelli's testimony as to her common practice, about 10 years after trial, was sufficient to show that she properly advised the defendant as to the penalties for all the charges he faced. As the defendant failed to establish any deficient performance, his claim for ineffective assistance necessarily fails. *Johnson*, 2021 IL 126291, ¶ 53 (failure to satisfy either prong of *Strickland* is fatal to a claim of ineffective assistance).

¶ 26   Even absent deficient performance, the defendant's claim of ineffective assistance would also fail for lack of prejudice. The trial court implicitly found that the defendant rejected the plea offer because he believed he could be acquitted at trial. This determination was not against the manifest weight of the evidence.

¶ 27   As noted above, a demonstration of prejudice must include more than a defendant's self-serving assertions; rather, there must be objective confirmation that the defendant rejected the plea offer based on erroneous advice, not due to other considerations. *Hale*, 2013 IL 113140, ¶ 18. In

this case, the record demonstrates that the defendant rejected the plea offer for other reasons. The record shows that the defendant was present in court when the State requested a rule to show cause because the victim was not cooperating. At that hearing, the defendant requested a bench trial because the State was having "witness issues." The defendant also knew he would present an alibi defense and that the credibility of Argo's testimony could be challenged, as Argo's agreement with the State gave him a potential motive to testify falsely. The foregoing demonstrates that the defendant rejected the plea offer because he believed he could be acquitted if the victim did not testify at trial, if he presented an alibi defense, and if Argo's testimony was deemed not credible.

¶ 28    The defendant argues that he had no valid reason to reject the plea offer because he knew his false alibi testimony was deeply flawed. He also knew that the victim would testify because the trial court issued a subpoena and rule to show cause against the victim. This assertion is self-serving and attempts to use knowledge of later events—that the victim did show up to testify at trial and that the State impeached his false alibi testimony—as influencing the defendant's decision-making process at the time of the plea. Transcripts of jailhouse phone calls admitted into evidence showed that the defendant spoke with his mother about the victim not cooperating despite a subpoena and about finding witnesses to support his alibi defense so that he could "beat" his case. The defendant's statements to his mother during jailhouse phone calls thus showed that he believed that, if the victim did not testify at trial and the case boiled down to a credibility contest between him and Argo, he could tip the scales with an alibi defense. This evidence supports the trial court's conclusion that the defendant rejected the plea offer because he believed he could be acquitted. The defendant has thus failed to demonstrate a reasonable probability that, but for trial counsel's alleged deficient performance, he would have accepted the plea offer. Accordingly, the

defendant's claim of ineffective assistance also fails because he cannot establish prejudice. *Johnson*, 2021 IL 126291, ¶ 53.

¶ 29                                  III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 31    Affirmed.

*People v. Gallardo*, **2024 IL App (2d) 230289**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 13-CF-245; the Hon. John A. Barsanti, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Andrew J. Boyd, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Adam J. Rodriguez, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |