2026 IL App (2d) 240447-U
No. 2-24-0447
Order filed March 3, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. NIKKOLAS W. OLIVER, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable D. Christopher Lombardo, Judge, Presiding.
No. 17-CF-2442

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Following a remand for compliance with Illinois Supreme Court Rule 604(d): (1) a second remand was required because the record refuted postremand counsel's certification that he made all necessary amendments to defendant's claim that plea counsel was ineffective and misadvised defendant regarding the 2021 plea offer, which expired; and (2) no remand was required on defendant's claim that plea counsel misadvised him about the terms of his 2022 plea agreement, because defendant had a full and fair hearing on the claim after the first remand, and the trial court properly found the claim was meritless.

¶ 2    Defendant, Nikkolas W. Oliver, pleaded guilty to being an armed habitual criminal, a Class X felony (720 ILCS 5/24-1.7(a) (West 2016)). The agreed sentencing range for the plea was 6 to 60 years in prison at 85%. The trial court sentenced defendant to 24 years in prison. Defendant contends that this cause must be remanded for a second time for compliance with Illinois Supreme

Court Rule 604(d) (eff. Apr. 15, 2024) because the record refutes his counsel's certification that he made any amendments to the postplea motion necessary for an adequate presentation of defendant's claims of error. We affirm in part, vacate in part, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      In October 2017, a grand jury indicted defendant on six counts, based on offenses committed on September 10, 2017: armed violence (720 ILCS 5/33A-2(a) (West 2016)), aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)); armed habitual criminal (AHC) (*id.* § 24-1.7(a)), unlawful use of weapons by a felon (*id.* § 24-1.1(a)), and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)). On November 13, 2018, the State filed a notice informing defendant that, because of his previous Class X felonies, he would be eligible for a mandatory sentence of life in prison if convicted of armed violence, aggravated battery with a firearm, or AHC.

¶ 5      Defendant was first represented by an assistant public defender and later retained private counsel (plea counsel). Because the assistant public defender subsequently became chief of the felony division for the Lake County State's Attorney's Office, defendant filed a motion requesting a special prosecutor. On June 30, 2021, the court appointed the Illinois Attorney General's Office to represent the State.

¶ 6      On September 1, 2021, the State informed the trial court that it had made an offer to defendant. Under the terms of the offer, defendant would plead guilty to AHC and serve 13 years in prison at 85%. The court informed defendant that, if he proceeded to trial and was found guilty of the most serious offenses, he would face a mandatory sentence of life in prison. The court then asked defendant if he understood the State's offer as well as the potential penalties if convicted at

trial, and defendant replied, "Yes, I do, Your Honor." The State told the court that it would keep the offer open until October 4, 2021.

¶ 7     At a hearing held on October 4, 2021, with defendant present, plea counsel stated,

"Your Honor, if I may. [The State] gave me an offer in this matter, and in terms of the offer, the statute keeps on changing so the offer that they gave me doesn't reflect the statute, what the statute is. *** I'm going to try to address that with the [State] to see if I can probably resolve this case."

¶ 8     At a case management hearing held on December 1, 2021, the State informed the trial court that defendant was "not present due to a Covid break out at the jail." When the court asked, "Where are we at with case management?" plea counsel replied, "I gave the State a good offer to try to resolve this case. He rejected it, [Y]our Honor. That's the last time I talked to the State." The court then asked, "All right, what do you want to do regarding next dates?" and the State replied, "Judge, I leave that to [plea counsel]. We are set for trial. ***."

¶ 9     The parties appeared for trial on April 18, 2022. Defendant waived his right to a jury trial, opting for a bench trial. The trial court asked the parties about possible sentencing ranges for the offenses. The State argued that, for AHC, the base range was 6 to 30 years but that enhancements could increase the term to 60 years or require a life sentence. In response, plea counsel argued that defendant was not eligible for a mandatory life sentence. The parties also argued whether defendant had committed the proper predicate offenses to be convicted of AHC. The court told defendant, "I'm not at this time indicating whether I would *** find that you are eligible for a life sentence. That is something that would only I think be relevant after the State has met its burden to convict on [AHC]. You understand that?" Defendant replied, "Yes, Your Honor."

¶ 10     The trial court then asked about prior plea negotiations. The State acknowledged the offer of 13 years at 85% for a plea to AHC but said the offer had been revoked. No other State offers were pending. With defendant's agreement, attorneys for the parties met in the court's chambers for a conference under Illinois Supreme Court Rule 402 (eff. July 1, 2012). Following the conference, plea counsel spoke privately to defendant, and then the hearing resumed. The court explained the negotiated plea to defendant. The court began by noting that, if convicted at trial, defendant "would be facing mandatory natural life in prison." The State's offer was that defendant would plead guilty to AHC, but the State would adduce only one of defendant's prior convictions, so as not to trigger mandatory life sentencing. After further discussion of prior offenses and possible enhancements, the following exchange ensued:

"THE COURT: *** Thus, the range of punishment would be 6 [years] as a minimum, 60 [years] as a maximum, all requiring you to serve 85 percent of your sentence, followed by a period of mandatory supervised release ***.

Is that your understanding of what your attorney shared with you of the negotiation, that it would be an open plea[1] and the [c]ourt would sentence you between 6 [years] and 60 [years]?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Do you have any questions whatsoever about the possible penalties that you face, the possible penalties you would face under this new negotiation?

---

[1]Below, the plea was frequently described as an "open plea," but this was incorrect. The plea was a negotiated one in that the State made a sentencing concession by agreeing not to introduce evidence that would have, as the parties agreed, triggered a mandatory life sentence. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

THE DEFENDANT: No, sir, Your Honor.

THE COURT: [Plea counsel], does your client wish to proceed with trial or has he decided to enter a plea under the newest terms?

[PLEA COUNSEL]: We're going to ask the [c]ourt to accept the plea to Count 4 [AHC] of this matter and continue it for sentencing.

THE COURT: So obviously, [defendant], this is a very important decision. Do you have any questions about anything thus far?

THE DEFENDANT: No, sir, Your Honor."

¶ 11 The trial court noted that defendant had signed a "Waiver of Trial" form. Before accepting defendant's plea, the trial court admonished defendant, detailing the rights he was giving up by waiving his right to a trial.

"THE COURT: So you understand all of the rights that I've gone over with you regarding the right to have a trial; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At this time do you wish to give up those rights because you wish to proceed with the plea of guilty under the negotiation we've heard about?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: No one has forced you or promised you anything in exchange for your Waiver of Trial?

THE DEFENDANT: No, sir, Your Honor.

THE COURT: [Defendant], I find that your Waiver is knowingly, intelligently made and voluntarily given and I accept your Waiver of Trial and I will enter the order now. ***."

¶ 12    Similarly, the "Waiver of Trial" listed the rights defendant was giving up by pleading guilty. At the top of the one-page form, a handwritten notation read: "Count 4 [AHC]/no life 6-60." At the bottom of the form, just above defendant's signature, the following acknowledgment appeared in all capital letters:

> "I HAVE READ THE ABOVE AND KNOWINGLY, VOLUNTARILY, AND UNDERSTANDINGLY WAIVE MY RIGHT TO TRIAL, AND STATE THAT, OTHER THAN IN A PLEA AGREEMENT MADE KNOWN TO THE COURT, NO PROMISES, THREATS, OR FORCE WERE USED TO OBTAIN THIS WAIVER."

¶ 13    At the trial court's request, the State recited the terms of the plea agreement: defendant was pleading guilty to AHC; it was an "open plea" with a sentencing range of 6 to 60 years in prison, served at 85%; and the State agreed not to present convictions that would trigger a life sentence. The State also agreed to *nolle pros* all other counts in this case as well as all counts in a misdemeanor domestic battery case pending against defendant. The court asked defendant if this was his understanding of the plea, and defendant said yes.

¶ 14    The trial court asked defendant if he understood everything that had been discussed, and defendant again said yes. Defendant confirmed that he was not under the influence of alcohol or any controlled substance, and that he was not prescribed any controlled substance. Then the court once again detailed the terms of the plea, and defendant again confirmed that he understood those terms.

¶ 15    The State then provided a factual basis for the plea. If the case proceeded to trial, the State would prove that, on September 10, 2017, police responded to an address in Waukegan after shots were fired and a child was struck with a ricochet. Police obtained a description of the shooter's vehicle. Sergeant Fong was in the area at the time and heard the description of the vehicle over his

radio. He saw a vehicle matching the description drive past him with its headlights, even though it was night. Fong conducted a traffic stop and ordered defendant, the car's only occupant, to exit. As soon as defendant exited the car, the police found a gun on the driver's seat. The gun was sent to the crime lab and found to be in working condition. The State would also prove that defendant had prior convictions of attempted armed robbery and unlawful possession of a controlled substance with intent to deliver. The defense stipulated to the factual basis.

¶ 16    Next, the trial court asked defendant to state for the record if he was pleading guilty to AHC based on the events of September 10, 2017, and defendant said yes. Before accepting the plea, the court asked defendant to confirm that he had ample opportunity to confer with plea counsel, that he did not have any questions, and that he believed the plea agreement was in his best interests. Defendant agreed, and the court accepted the guilty plea.

¶ 17    Four months later, on August 26, 2022, a sentencing hearing was held, and the trial court heard arguments in aggravation and mitigation. The State asked for an extended term of 30 to 60 years in prison, served at 85%. In his response, plea counsel stated,

> "I don't want to indicate to the State that their argument is a misrepresentation of what was said in the 402 conference, but we thought that we had somewhat of a firm agreement and a firm determination in terms of what we were going through in terms of sentencing."

Plea counsel went on to argue that no extended term was discussed in the Rule 402 conference, saying, "Didn't we have a range at that particular time? I'm looking at a range [now]. I'm not looking at 60 years." And later, plea counsel stated that defendant had been convicted of "habitual criminal offense," which "carries a sentence between 6 and 30 [years in prison]." Plea counsel asked for a sentence of less than 10 years.

¶ 18    In response to the parties' arguments, the trial court stated:

"[A]t the time of the plea, [defendant] was advised that he would plead guilty to the Class X [AHC] count; and that the State would cap his sentence at 60 years. There was no [sleight] of hand. That was the negotiation before the plea was entered, that the State would be arguing between 6 and 60 years.

I find no misrepresentations were made. I think the defendant was most amply notified of the negotiation. He accepted the negotiation. And he voluntarily entered his plea."

The court went on to discuss factors in aggravation and mitigation before sentencing defendant to 24 years in prison.

¶ 19 On September 14, 2022, plea counsel filed a "Motion to Vacate Plea, and Motion to Reconsider Sentencing." The motion alleged that, during the Rule 402 conference, plea counsel argued that defendant was not eligible for a life sentence and that, to resolve the case, defendant "would plead to a sentence of 9 years at 85%." The motion went on to allege (1) that "the [c]ourt after hearing [that offer] concurred and recommended a sentence [of] just more than 13 years ***, and further stated [*sic*] to tell the defendant to accept what was recommended"; (2) that "at sentencing, the [c]ourt sentenced the defendant for 24 years[,] [w]hich was outside of all agreements and the [c]ourt recommendation"; and (3) that "at the time of [the] [p]lea, the false and inaccurate recommendation caused the defendant to involuntary plea to the habitual criminal offense." Plea counsel filed a facially compliant Rule 604(d) certificate, dated September 9, 2022, along with the motion. At the hearing on the motion, held September 16, 2022, plea counsel told the court that he still needed "to order a transcript of [defendant's] plea." In response, the court stated,

"All right, the only concern I have about the 604(d) certificate is you have not yet reviewed the report of the proceedings, so that's the purpose of the certificate is that you affirm that you have done so.

\*\*\* [You] [p]robably should file another 604(d) certificate that actually is consistent with your review of the proceedings."

The court continued the hearing.

¶ 20 On January 27, 2023, the trial court heard argument on the motion. Plea counsel asserted that the court had indicated at the Rule 402 conference that defendant would be sentenced in the range of 13 to 20 years. Plea counsel said he repeated that information to defendant. Because the court ultimately sentenced defendant outside that range, defendant's plea was "coerced" and involuntary. In response, the State argued that plea counsel's allegations misrepresented what was said during the Rule 402 conference, that the record clearly established the details of the negotiated plea, and that all parties agreed in open court as to the details of that plea. The court read aloud parts of the transcript from the plea hearing, then asked plea counsel whether defendant had not been advised in open court that the plea had a sentencing range of 6 to 60 years. Plea counsel stated that, based on discussions during the Rule 402 conference, he "took it on [himself] to believe that the sentence was going to be much, much less" than 24 years.

¶ 21 The trial court denied the motion to vacate the plea, stating, "There is absolutely nothing in the record that would suggest either the [c]ourt or any attorney advised the [d]efendant that he would be looking at a particular term of years." The court also noted that it had asked defendant on the record whether anyone had promised him anything beyond the terms of the plea as set out by the court, and defendant said no.

- 9 -

¶ 22    The court also denied the motion to reconsider the sentence, noting that factors in aggravation supported the sentence.

¶ 23    Defendant filed a notice of appeal that same day. Later, defendant filed an "Unopposed Motion for Summary Vacatur and Remand," arguing that the record refuted the validity of plea counsel's Rule 604(d) certificate because he told the trial court that he filed the certificate before obtaining the transcript of the plea hearing. The motion also stated that plea counsel never filed a new Rule 604(d) certificate, despite the trial court advising him that he should. This court granted the motion, stating:

> "The denial of appellant's Rule 604(d) motion is vacated, and the cause is remanded for '(1) the filing of a [valid] Rule 604(d) certificate; (2) the opportunity to file a new motion to withdraw the guilty plea and/or reconsider the sentence, if counsel concludes that a new motion is necessary; and (3) a new motion hearing.' *People v. Lindsay*, 239 Ill. 2d 522, 531 (2011)."

On remand, plea counsel withdrew, and the trial court appointed the public defender's office to represent defendant (postremand counsel).

¶ 24    Postremand counsel filed a Rule 604(d) certificate dated June 14, 2024, along with an "Amended Petition for Post-Conviction Relief." The petition alleged that, following the Rule 402 conference, plea counsel "failed to fully advise [defendant] of the [trial] [c]ourt's posture and of the range of outcomes if he were to proceed at a trial or an open plea." It also alleged that defendant "did not comprehend the ramifications" of rejecting the initial plea offer, which the State later withdrew. The petition requested that the trial court vacate the conviction and grant defendant a new trial. At a subsequent hearing, the court told postremand counsel that filing a postconviction

petition did not comply with this court's remand order. The court continued the case so that counsel could file a Rule 604(d) motion.

¶ 25 On July 5, 2024, postremand counsel filed a new Rule 604(d) certificate along with an "Amended Motion to Withdraw Guilty Plea or Reconsider Sentence." By signing the Rule 604(d) certificate, postremand counsel certified:

"1. I have consulted with the [d]efendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;

2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

The amended motion alleged that, after the Rule 402 conference, defendant had a private conversation with plea counsel, who advised him that, if he agreed to the plea negotiation, the trial court "would not sentence him to anything over 13 years" in prison; based on that information, defendant chose to proceed with the plea, which then resulted in a sentence substantially higher than 13 years. The motion also alleged that defendant "did not comprehend the ramifications of rejecting the State's earlier plea offer due to erroneous and/or incomplete information he received from counsel." No affidavit was filed along with the motion.

¶ 26 A hearing on the motion was held on July 12, 2024. Postremand counsel confirmed to the trial court that he had already reviewed the transcripts from defendant's guilty plea and the sentencing hearing. Defendant testified that he agreed to the Rule 402 conference and that plea counsel spoke to him immediately after the conference. Plea counsel advised him that, if he agreed

- 11 -

to the plea, he would be sentenced to no more than 13 years "and that they all had a conversation regarding that" during the conference. Defendant pleaded guilty and was later sentenced to 24 years in prison. When asked whether there had been a previous plea offer, defendant said there had been an offer to plead guilty in exchange for a 13-year prison sentence. Postremand counsel asked, "To your knowledge when was that offer revoked or taken off the table by the State?" and defendant replied, "At sentencing." When asked why he did not say anything when the trial court asked him if anyone promised him anything to get him to sign the trial waiver, defendant said that, during their meeting after the Rule 402 conference, plea counsel told him not to say anything. Postremand counsel asked defendant if he would have accepted the 13-year offer had he "been advised" by plea counsel, and defendant confirmed that he would have.

¶ 27    On cross-examination, the State asked defendant whether he was informed of all possible penalties when he was arraigned, and defendant said yes. The State then turned to the day of the guilty plea, and this exchange followed:

"Q. The judge informed you that you could be sentenced up to 60 years in the Department of Corrections on this plea agreement; correct?

A. Yes, yes.

Q. And you told the judge that you had been made no other promises related to the plea agreement; correct?

A. Right.

Q. And you would agree to [*sic*] me that 24 years in the Department of Corrections falls within the range of 6 to 60 years in the Department of Corrections; correct?

A. Correct.

Q. And you were given every opportunity to explain to the judge that you had been told or promised something else by somebody else; correct?

A. My attorney told me not to say anything.

Q. Did I ever promise anything other than I would argue you were eligible for a sentence of 6 to 60 years in the Department of Corrections?

A. No, we never had that discussion.

Q. And the judge never told you that there was going to be anything at the sentencing other than you would be sentenced between 6 and 60 years in the Department of Corrections; correct?

A. Correct."

After the cross-examination concluded, postremand counsel told the court that he had no further questions, and he presented no further evidence.

¶ 28　In his argument in support of the motion, postremand counsel asserted that, although the record showed that both the trial court and the State advised defendant of the plea terms, defendant would have understandably put more trust in his own attorney. Therefore,

"when his attorney tells him something that is totally different from what probably is the truth of what happened in that 402-conference it puts [defendant] in a difficult position of relying on that and he just didn't have all the facts that he needed to make a decision, and [defendant] alleged that that was because of [plea counsel's] actions."

Postremand counsel asked the court to grant the motion to withdraw the guilty plea or reconsider the sentence, "in light of fact of how [*sic*] the sentence came about after the rejection of an offer that he would have accepted." In response, the State argued that the record clearly showed that defendant was properly advised of the terms of the plea agreement, and he affirmed that he

understood those terms. Therefore, defendant accepted the plea agreement "knowingly and voluntarily."

¶ 29    The trial court found that the record supported the determination that defendant entered the plea knowingly and voluntarily. The court reasoned:

>    "I believe the transcript and record established on that day supported then and supports today my determination that this defendant understood the possible range of punishment, the benefit to the defendant to not be subject to a possible sentence of life imprisonment, his right to a jury trial, his right to a bench trial, the consequences of his plea, the voluntariness of his plea, and I find the plea was entered knowingly. The plea was entered voluntarily. I do not find he was coerced, misled or pressured in any way to enter his plea.

>    Respectfully, [defendant], I find that you understood all of your rights. It was a situation you found yourself [*sic*] to unfortunately pass upon a much more favorable negotiation, but these things happen as you assert your rights to trial. I find unfortunately for you today that *you found yourself in a situation in which the best possible outcome [was] to enter an open plea on the date that you pled guilty and today find that you are simply dissatisfied with the [c]ourt's sentence*.

>    I do not believe that you passed on each and every opportunity to tell the [c]ourt that you had some expectation that was not put on the record. I find that not to be credible. I find that you understood and hoped that the [c]ourt might lessen the sentence that you received." (Emphasis added.)

The court denied the motion. Defendant now appeals.

¶ 30                                II. ANALYSIS

¶ 31                             A. General Principles

¶ 32    At issue in this appeal is whether postremand counsel's amended Rule 604(d) certificate, filed on July 5, 2024, failed to comply with the requirements of Rule 604(d). Defendant contends on appeal that plea counsel misadvised him regarding two plea offers: (1) the State's 2021 plea offer for 13 years in prison, which was revoked because defendant did not accept it by October 4, 2021, and (2) the plea offer for a sentence between 6 and 60 years, which defendant accepted following the Rule 402 conference held on April 18, 2022. In response, the State argues that defendant did not raise a claim of error regarding the 2021 plea offer. The State further argues that "defendant had a full and fair hearing on the single issue he wished to raise in his postplea motion," namely plea counsel's advice regarding the 2022 plea offer, "and the record demonstrates that reconsideration of that issue would be a futile exercise." Thus, according to the State, a second remand is not required. We review *de novo* whether defense counsel has complied with Rule 604(d). *People v. Brown*, 2024 IL 129585, ¶ 48.

¶ 33    "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *Id.* ¶ 47. One of the fundamental requirements under Rule 604(d) is that "[t]he motion shall be in writing and shall state the grounds therefor." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). In addition, "[w]hen the motion is based on facts that do not appear of record it shall be supported by affidavit." *Id.* Rule 604(d) also imposes a certification requirement on the defendant's attorney. Counsel must certify, among other things, that he or she "has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." *Id.*

¶ 34    "The filing of a Rule 604(d) certificate allows the circuit court to ensure counsel has reviewed the defendant's claim and considered all relevant bases for moving to withdraw the guilty plea or to reconsider the sentence." *Brown*, 2024 IL 129585, ¶ 47. "The attorney certificate thereby encourages the preservation of a clear record, both in the trial court and on appeal, of the reasons why a defendant is moving to withdraw his plea or to reduce sentence." *People v. Shirley*, 181 Ill. 2d 359, 361 (1998). And compliance with the motion requirement "permits the trial judge who accepted the plea and imposed sentence to consider any allegations of impropriety that took place *dehors* the record and correct *any error that may have led to the guilty plea*." (Emphasis added.) *Id.*

¶ 35    It is well established that the certificate must strictly comply with the requirements of Rule 604(d). See *People v. Janes*, 158 Ill. 2d 27, 35 (1994). Even when a 604(d) certificate is valid on its face, the reviewing court "may consult the record to determine whether [counsel] actually fulfilled [the] obligations under Rule 604(d)," *i.e.*, whether the record confirms or refutes the certificate. *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8. "Counsel's failure to strictly comply with the rule 'requires "a remand to the circuit court for the filing of a new motion to withdraw guilty plea or to reconsider sentence and a new hearing on the motion." ' " *Brown*, 2024 IL 129585, ¶ 48 (quoting *People v. Gorss*, 2022 IL 126464, ¶ 19, quoting *Janes*, 158 Ill. 2d at 33). However, multiple remands are not always necessary. See *Shirley*, 181 Ill. 2d at 369. As our supreme court has explained,

> "The point of Rule 604(d) is to ' "protect the defendant's interests through adequate consultation. The certificate serves as evidence that the requisite consultation has taken place." ' [Citation.] This court has rejected arguments that the strict compliance standard of Rule 604(d) 'must be applied so mechanically as to require Illinois courts to grant

- 16 -

multiple remands and new hearings following the initial remand hearing.' [Citation.] Where a defendant has been 'afforded a full and fair second opportunity to present a motion for reduced sentencing,' there is 'limited value in requiring a repeat of the exercise, absent a good reason to do so.' [Citation.]" *Brown*, 2024 IL 129585, ¶ 53.

Here, even if postremand counsel failed to strictly comply with the requirements of Rule 604(d), a second remand is not required if defendant was afforded a full and fair opportunity to present his amended motion to vacate his guilty plea. "Where postplea counsel files a facially compliant Rule 604(d) certificate and the trial court determines after a full and fair hearing that the defendant's claims are meritless, defects in the pleadings do not justify a remand for further proceedings." *People v. Brown*, 2023 IL App (4th) 220573, ¶ 50. "[I]t would be an exercise in futility and a waste of judicial resources to remand for an attorney to replead a claim that has already been adjudicated meritless." *Id.*

¶ 36                              B. 2021 Plea Offer

¶ 37    First, we consider whether defendant wished to raise a claim that plea counsel misadvised him regarding the State's plea offer in 2021. The State asserts that "[postremand counsel's] amended Rule 604(d) motion did not raise this claim at all, and defendant's own testimony shows that he did not want to raise it." In reply, defendant argues that "the plain language of the amended motion explicitly suggests otherwise," pointing to paragraph five of the motion filed July 5, 2024. The full text of paragraph five reads: "The [d]efendant did not comprehend the ramifications of rejecting the State's earlier plea offer due to erroneous and/or incomplete information he received from counsel." Defendant also points to testimony he gave during the hearing on the amended motion. In response to the question on direct examination, "[I]s it your contention that you you [*sic*] would have accepted the 13-year offer had you been advised by [plea counsel]?"

Defendant replied, "Correct." We agree with defendant that both the amended motion and the transcript of the hearing on the amended motion support the contention that defendant wished to raise a claim of ineffective assistance of counsel with respect to the lapsed 2021 plea offer. We turn next to whether postremand counsel complied with Rule 604(d)'s certification requirement with respect to that claim of ineffectiveness.

¶ 38     Defendant argues that postremand counsel did not amend the Rule 604(d) motion to adequately present a claim alleging that plea counsel provided erroneous or incomplete advice to defendant during the 2021 plea negotiations. We agree. As this court explained in *People v. Gallardo*, 2024 IL App (2d) 230289, ¶ 22:

> "A defendant has a constitutional right to elect what plea to enter [citation] and to be reasonably informed as to the direct consequences of accepting or rejecting a plea offer [citation]. Counsel's performance is deficient if counsel fails to ensure that a defendant accepts or rejects a plea voluntarily and intelligently. [Citation.] To establish prejudice where a plea offer was rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have accepted the plea offer absent his attorney's deficient advice. [Citation.] Such demonstration must include more than a defendant's own subjective, self-serving assertions. [Citation.] Instead, there must be ' "independent, objective confirmation that [the] defendant's rejection of the proffered plea was based upon counsel's erroneous advice," and not on other considerations.' [Citation.] Additionally, a defendant must demonstrate a reasonable probability that the plea would have been entered without the prosecution withdrawing it or the trial court refusing to accept it. [Citation.] 'The disparity between the sentence a defendant faced and

a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice.' [Citation.]"

¶ 39 Here, although the amended motion to withdraw the guilty plea asserts that defendant received "erroneous and/or incomplete information *** from [plea counsel]" regarding the 2021 plea offer, and defendant testified at the hearing that he would have accepted the plea offer if he had "been advised" by plea counsel, the amended motion failed to allege the elements of a claim of ineffective assistance of counsel, and no affidavit was filed to supply facts that do not appear in the record. In fact, postremand counsel presented nothing beyond defendant's "subjective, self-serving assertions," which, alone, cannot support such a claim. See *id.* Furthermore, the record sheds no light on why the 2021 plea offer was not accepted. It reveals only that defendant was informed at a hearing on September 1, 2021, that the 13-year plea offer would be revoked on October 4, 2021, and that, at a hearing held on October 4, 2021, with defendant present, plea counsel stated,

"Your Honor, if I may. [The State] gave me an offer in this matter, and in terms of the offer, the statute keeps on changing so the offer that they gave me doesn't reflect the statute, what the statute is. *** I'm going to try to address that with the [State] to see if I can probably resolve this case."

¶ 40 Plea counsel's statement seems to suggest that—at a hearing held on the last day before the offer was revoked—plea counsel had still neither accepted nor rejected the offer, and that he intended to resolve the case through a plea rather than by going to trial, where defendant would have been exposed to the risk of a mandatory life sentence. Then, at a case management hearing held on December 1, 2021, when defendant was not present, the court asked, "Where are we at with case management?" and plea counsel replied, "I gave the State a good offer to try to resolve

- 19 -

this case. He rejected it, [Y]our Honor. That's the last time I talked to the State." Thus, the amended Rule 604(d) motion insinuates the ineffective assistance of counsel regarding the 2021 plea, yet it provides no facts or argument to support such a claim. Nor was the claim developed at the motion hearing. Postremand counsel mentioned only in passing that defendant's "sentence came about after the rejection of an offer that he would have accepted." Because the trial court did not—and indeed could not meaningfully—consider the merits of an ineffectiveness claim concerning the 2021 plea offer, we conclude that defendant was not afforded a full and fair opportunity to present the claim. Therefore, we must remand for compliance with Rule 604(d) regarding this claim.

¶ 41                                    C. 2022 Plea Agreement

¶ 42    Defendant next argues that postremand counsel did not amend the Rule 604(d) motion to adequately present the claim that, after the Rule 402 conference, plea counsel provided erroneous advice, on which defendant relied when he pleaded guilty. The amended motion alleged that plea counsel informed defendant "that if he were to proceed to a sentencing hearing, the [c]ourt would not sentence him to anything over 13 years in [the] IDOC." The State concedes that "[postremand counsel] did not allege certain facts necessary to establish that [plea counsel's] alleged deficiency in advising [defendant] after the Rule 402 conference prejudiced defendant or file an affidavit from defendant supporting such allegations." However, the State argues that "a second remand to correct these defects is unnecessary because defendant was afforded a full and fair opportunity to present this claim," and that the claim "was refuted by the court's clear admonishments and defendant's statements on the record." We agree with the State.

¶ 43    During the hearing on the amended Rule 604(d) motion, the trial court heard defendant's testimony and postremand counsel's arguments. The court reviewed the transcript of the plea hearing and gave a detailed basis for its ruling. The court found that the record supported the

determination that defendant entered the plea knowingly and voluntarily. The court "[did] not find [defendant] was coerced, misled or pressured in any way to enter his plea." The court concluded that defendant found himself "in a situation in which the best possible outcome [was] to enter an open plea on the date that [he] pled guilty," and he later found himself "simply dissatisfied with the [c]ourt's sentence." The court went on to state, "I do not believe that you passed on each and every opportunity to tell the [c]ourt that you had some expectation that was not put on the record. I find that not to be credible."

¶ 44 We find that the trial court gave defendant a full and fair hearing on this claim and concluded that it was meritless. Even though postremand counsel failed to present legal argument or evidence (beyond defendant's own testimony) to support a claim of ineffective assistance of counsel, such a claim is refuted by the record. Defendant cannot credibly assert that he was prejudiced by plea counsel's ineffectiveness on the day he pleaded guilty because—regardless of what was said during defendant's private consultation with plea counsel—the court subsequently explained the plea offer multiple times on the record, defendant affirmed on the record that he understood the offer, and defendant also affirmed that plea counsel presented the same terms that the court presented. "It is well settled that a defendant must alert the court at the guilty plea proceeding if his decision to plead guilty was influenced by something counsel told him that differed from the terms of the plea as described in court." *People v. Diaz*, 2021 IL App (2d) 191040, ¶ 24. Because this claim has already been adjudicated meritless, "it would be an exercise in futility and a waste of judicial resources" to require an attorney to replead it. See *Brown*, 2023 IL App (4th) 220573, ¶ 50.

¶ 45 III. CONCLUSION

¶ 46 For the foregoing reasons, with respect to defendant's apparent claim of ineffective assistance of counsel regarding the 2021 plea offer, we vacate the denial of defendant's motion to withdraw his plea and remand the cause to the circuit court of Lake County for: (1) the filing of a [valid] Rule 604(d) certificate; (2) the filing of a new Rule 604(d) motion that adequately presents the claim that plea counsel provided erroneous or incomplete advice to defendant during the 2021 plea negotiations; and (3) a new motion hearing. See generally *Lindsay*, 239 Ill. 2d at 531. In all other respects, including the trial court's conclusions regarding the 2022 plea agreement, the judgment is affirmed.

¶ 47 Affirmed in part; vacated in part and remanded.